IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

_____

| | | |
|---|---|---|
| LUCIEN S. BONCK III, | ) | Cause No. CV 11-48-BLG-RFC-CSO |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | FINDINGS AND RECOMMENDATION |
| | ) | OF U.S. MAGISTRATE JUDGE |
| WARDEN, YELLOWSTONE | ) | |
| COUNTY DETENTION CENTER; | ) | |
| ATTORNEY GENERAL OF THE | ) | |
| STATE OF MONTANA, | ) | |
| | ) | |
| Respondents. | ) | |

_____

This action for writ of habeas corpus under 28 U.S.C. § 2254 was filed on May

16, 2011, by Petitioner Lucien Bonck. Initially, it appeared the petition was time-

barred and procedurally barred, but Bonck's response to the Court's Order to Show

Cause called those bars into question. On June 24, 2011, the State was ordered to file

the relevant state-court documents.  It complied on August 5, 2011, and supplemented its response on August 29, 2011.  Bonck filed additional exhibits on September 7 and 19, 2011.

## I. Background

On February 4, 2004, Bonck pled guilty in Montana's Thirteenth Judicial District Court, Yellowstone County, to sexual intercourse without consent under Cause No. DC 02-0783.  The offense involved an eight-year-old boy, K.C., and entailed a maximum sentence of life or 100 years in prison and mandatory participation in "the educational phase of the prison's sexual offender program." Mont. Code Ann. §§ 45-5-503(3)(a), 46-18-202(3) (2001).  Bonck could also have been declared ineligible for parole.  *Id.* § 46-18-202(2).

As part of his Plea Agreement with the State, two charges of sexual assault on other child victims, as well as other charges alleged in separate cases, were dismissed. The parties also agreed that the appropriate sentence was twenty years in prison, with all but 64 months suspended, and no parole during the unsuspended 64-month prison term.  The agreement was binding on the trial court.  Change of Plea Tr. (doc. 16) at 9:5-11; Plea Agreement (Pet. Ex. (doc. 1-2 at 28)).

At the sentencing hearing on March 3, 2004, Bonck, though represented by counsel, personally moved to withdraw his guilty plea.  State Court Record (doc. 12)

("Record") Ex. A at 6:18-7:3. The trial court denied his motion and sentenced him as the Plea Agreement provided. *Id.* at 12:3-22. On April 19, 2004, Bonck filed a second motion to withdraw his guilty plea. Record Ex. B at 1. On or about May 3, 2004,[1] Bonck's time to appeal expired, with the motion to withdraw his guilty plea still pending.

In December 2009, Bonck moved the trial court for a third time for leave to withdraw his 2004 guilty plea in Cause No. DC 02-0783. The motion was denied as untimely. Record Ex. E at 3. Later, in the midst of a proceeding in another case, Bonck argued that his December 2009 motion in DC 02-0783 was not untimely because the trial court had never ruled on his April 2004 motion. Accordingly, on May 7 and 26, 2010, the trial court held a hearing on the April 2004 motion. Pet. Ex. (doc. 1-2 at 5).[2] The trial court denied the motion. Bonck appealed. The Montana Supreme Court rejected his claims and affirmed the trial court on April 5, 2011. Record Ex. I at 3 ¶ 5.

## II. Bonck's Allegations

---

[1] The record does not show when written judgment was entered. The 60-day appeal period runs from that date. Mont. R. App. P. 5(b) (2003) (now 4(5)(b)(i)).

[2] The State was ordered to file the trial court's final order denying the motion. It filed the January 2010 order, not the June 2010 order. But Bonck filed the correct order as an exhibit to his Petition.

Bonck's § 2254 petition alleges that he pled guilty while he was on medication and after "hours of badgering by my lawyer." Pet. (doc. 1) at 4 ¶ 15A. Bonck also alleges that he received, after he pled guilty, discovery proving he had no contact with the victims; he has phone records that prove he "was not even there"; and he did not receive the presentence report. Pet. at 4-5 ¶ 15B. He wishes to withdraw his guilty plea and proceed to trial. *Id.* at 6 ¶ 18.

### III. Analysis

Rather than resolving procedural issues,[3] it is more efficient to address the merits of Bonck's claims. 28 U.S.C. § 2254(b)(2); *Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997) (making detailed analysis of constitutional issue despite outstanding question as to procedural bar); *Gutierrez v. Griggs*, 695 F.2d 1195, 1198 (9th Cir. 1983).

---

[3] It appears likely the petition is procedurally defaulted because Bonck cited no Federal legal theory on appeal. *Baldwin v. Reese*, 541 U.S. 27, 32 (2004); *Davis v. Silva*, 511 F.3d 1005, 1009 (9th Cir. 2008). On May 18, 2011, Bonck was ordered to show cause why his petition should not be dismissed with prejudice as procedurally barred because he failed to comply with the one-year time limitation of Mont. Code Ann. § 46-16-105(2) (2003). Order to Pet'r to Show Cause (doc. 4) at 5-7. That Order, however, was based on a misunderstanding of the procedural history of the case in state court. Bonck clarified, in his response, that the trial court held a hearing on the April 2004 motion on May 7, 2010, so the motion was arguably timely. Resp. to Order (doc. 7) at 5 (clarifying that trial court held hearing on April 2004 motion on May 7, 2010). Though the petition may still be defaulted on other grounds, Bonck would have to be given another opportunity to excuse the default. It is therefore more efficient to consider the merits of the petition.

## A. The Record Before the Court

"[A]uthority to grant habeas relief to state prisoners is limited by § 2254, which specifies the conditions under which such relief may be granted to 'a person in custody pursuant to the judgment of a State court.'" *Felker v. Turpin*, 518 U.S. 651, 662 (1996). Section 2254(e)(2) provides:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that –
>
> (A)  the claim relies on . . .[4]
>
>> (ii)  a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B)  the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

In sum, federal review is generally restricted to the state court record. The Court may consider new evidence if Bonck did not "fail[] to develop the factual basis of a claim in State court proceedings." Alternatively, if he did fail, new evidence may be considered only if "the claim relies on . . . a factual predicate that could not have been previously discovered through the exercise of due diligence" *and* if the facts

---

[4]  Subsection (A)(i) involves "a new rule of constitutional law" and does not apply in Bonck's case.

Bonck seeks to establish would show, by clear and convincing evidence, that "no reasonable factfinder would have found [him] guilty of the underlying offense." 28 U.S.C. § 2254(e)(2), (A)(ii), (B).

"We ask first whether the factual basis was indeed developed in state court, a question susceptible, in the normal course, of a simple yes or no answer." *Williams v. Taylor*, 529 U.S. 420, 431 (2000). The question must be asked as to each claim. If the answer is yes, the federal court reviews the state court record. If the answer is no, the next question is whether Bonck was diligent in his efforts to develop the facts supporting his claim in the state courts. *Id.* at 431-32. "Diligence . . . depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court." *Id.* at 435. If Bonck's attempts to develop the claim were reasonable, then § 2254(e)(2) does not preclude further development of the facts in federal court; but if not, then Bonck must meet the stringent criteria of § 2254(e)(2)(A)(ii) and (B). *Williams*, 529 U.S. at 436-37.[5]

### B. Guilty Plea

Bonck claims that his guilty plea was invalid because he was confused by the

---

[5] The Court has considered the extensive comments written by Bonck on many of the documents he has submitted and, where possible, construed them as argument. Those comments that refer to facts outside the state court record cannot be considered, but, in any event, his comments are not determinative in the outcome of the analysis.

medication he was taking at the time he changed his plea and because his attorney coerced him.

A guilty plea must be the voluntary expression of the defendant's own choice. *Brady v. United States*, 397 U.S. 742, 748 (1970).

> A defendant who enters [a guilty] plea simultaneously waives several constitutional rights, including his privilege against compulsory self-incrimination, his right to trial by jury, and his right to confront his accusers. For this waiver to be valid under the Due Process Clause, it must be an intentional relinquishment or abandonment of a known right or privilege. Consequently, if a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void.

*McCarthy v. United States*, 394 U.S. 459, 466 (1969) (internal citations, quotation marks, and footnotes omitted).

Bonck developed most of the facts in support of this claim in state court, but he also requested additional testimony as to his prescription medications from a witness who had already been excused. *See* Record Ex. D2 at 2:16-4:15. Because he did not request a continuance to obtain that witness's testimony, did not object to the trial court's ruling without further testimony from her, and did not appeal on that basis, he did not make a reasonable effort to obtain additional testimony from her. He could have obtained such evidence at least at the time of the May 2010 hearing, if not

sooner. He cannot meet the criterion of § 2254(e)(2)(A)(ii), and the state court record stands as is.

The issue, therefore, is whether the evidence in the state court record carries Bonck's burden of proof and shows that he should prevail.

### 1. Confusion Resulting from Medication

Bonck's claim of confusion resulting from prescription medications is a claim that he was not competent to enter a guilty plea. *E.g.*, *McMurtrey v. Ryan*, 539 F.3d 1112, 1125-26 (9th Cir. 2008). To be competent, a defendant must be able "to consult with his lawyer with a reasonable degree of rational understanding" and have a "rational as well as factual understanding of the proceedings against him." *Godinez v. Moran*, 509 U.S. 389, 396 (1998) (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam)). But "[a] competency determination is necessary only when a court has reason to doubt the defendant's competence." *Moran*, 509 U.S. at 402 n.13; *see also Drope v. Missouri*, 420 U.S. 162, 180 (1975). Further, in collateral proceedings attacking a previously entered criminal judgment, the prisoner has the burden of proving that he was not competent at the time he changed his plea. *See McKinney v. United States*, 487 F.2d 948, 949 (9th Cir. 1973).

Bonck gave no indication at the change of plea hearing that his competency should be questioned. He acknowledged that he read, understood, agreed with, and

signed the plea agreement. Change of Plea Tr. at 4:9-5:1. He understood he was relinquishing "a wide variety of constitutional rights," which were described both orally by the trial court, *id.* at 5:2-6:6, and in paragraphs 3 and 4 of the Plea Agreement, *see* Pet. Ex. (doc. 1-2 at 28 ¶¶ 3-4). He specifically understood he was relinquishing his speedy trial motion and any and all complaints against previous counsel. *Id.* at 6:7-7:13. When asked questions that should have brought any confusion to light, he responded in an unexceptional way:

> The Court: Are you suffering from any disabilities or are you under the influence of alcohol or drugs?
>
> Bonck: No, sir.
>
> The Court: Are you satisfied with the services of [sic] Mr. Michael has given you?
>
> Bonck: Yes, sir.
>
> The Court: And have you had enough time to think about this so that you want to plead guilty today?
>
> Bonck: Yes, sir.

Change of Plea Tr. at 8:1-10. He knew what a guilty plea was, Record Ex. D2 at 20:3-26:17, and he said he was guilty, and he described his crime. Change of Plea Tr. at 8:16-9:20. The record reveals no sign that Bonck was even mildly confused, much less incompetent, at the change of plea hearing.

As for any inward confusion Bonck may have experienced, testimony at the May 2010 hearing established that he was taking Prozac and Sinequan.[6]  Record Ex. D1 at 17:19-20:14.  But the State's expert testified that, if Bonck was experiencing confusion as a result of his medications, he likely would have exhibited some outward sign of impairment as well, such as slurred speech, drowsiness, or lack of coordination.  *Id.* at 10:16-13:7.[7]  While Bonck filed medical grievances in jail, none of them concerned side effects or complications from his medications, *id.* at 19:13-21, 20:12-14, and he does not appear to have been confused while he was writing his grievances, *see* Yellowstone County Exhibits (doc. 14-1) at 4-5.  In addition, witnesses who were with Bonck before and at the change of plea hearing repeatedly testified that he was very much alert and participating.  Record Ex. D1 at 28:7-13, 31:13-15, 33:11-34:22, 35:16-20, 36:7-37:24, 49:25-50:7 (Michael), 53:15-20, 57:3-

---

[6]  At the May 26 hearing, Bonck read, apparently from the same exhibit as Nurse Kydland, that he was also on "Reglar" (possibly "Reglan") and Benadryl. Record Ex. D2 at 8:15-16.  Bonck's supplemental exhibits, Yellowstone County Records (doc. 14-1) at 1-6, do not show that he was taking Benadryl.  One of his exhibits refers to Elavil, *id.* at 1, but the latest date on the exhibit is February 18, 2003. The exhibits dated in the first few months of 2004 do not refer to Elavil.

[7]  The testimony referred to "overdosing."  *E.g.*, Record Ex. D1 at 12:7-13. Bonck pointed out that he was not talking about overdosing, merely the effects of the medication.  *Id.* at 20:25-21:6; *see also* Resp. to Record (doc. 14) at 1.  The testimony is fairly read as addressing *impairment* as a result of the medication.  *Id.* at 11:16-12:6. The relevant issue is whether Bonck's ability to understand what he was doing was *impaired* by his prescription medications.

12, 57:22-58:19 (Stovall). While defense investigator Stovall agreed he could not say Bonck was "fully capable of understanding everything that went on," *id.* at 61:3-5, Bonck's question was so broad that it could not elicit a probative answer to it. As against all this testimony, there is only Bonck's own statement, at the sentencing hearing after the fact, that he was "confused." Record Ex. D2 at 8:23-9:4.

Bonck's testimony, *e.g.*, Record Ex. D1 at 63:12-17; Record Ex. D2 at 7:5-8:23, does not establish that he was confused, and falls far short of proving he was incompetent. This claim should be denied for lack of merit.

### 2. Actions of Defense Counsel

The decision whether to plead guilty or go to trial is the defendant's, not counsel's. Even if counsel correctly believes a guilty plea is the only realistic and reasonable choice, a defendant cannot be coerced into taking it. Actions of defense counsel may render a plea involuntary and thus violate due process. *E.g.*, *Iaea v. Sunn*, 800 F.2d 861, 866 (9th Cir. 1986).

A counsel-coercion claim is analyzed like a claim that a confession to police was involuntary: the central question is whether the defendant's will was overborne. *Id.*; *see also Miller v. Fenton*, 474 U.S. 104, 109-10 (1985), *cited in Iaea*, 800 F.2d at 866; *Amaya-Ruiz v. Stewart*, 121 F.3d 486, 494 (9th Cir. 1997) (quoting *Derrick v. Peterson*, 924 F.2d 813, 817 (9th Cir. 1990)). "The line of distinction is that at which

governing self-direction is lost and *compulsion, of whatever nature or however infused*, propels or helps to propel the [plea]." *Collazo v. Estelle*, 940 F.2d 411, 416 (9th Cir. 1991) (en banc) (quoting *Culombe v. Connecticut*, 367 U.S. 568, 602 (1961)) (emphasis in *Collazo*).

On the other hand, "[m]ere advice or strong urging . . . to plead guilty based on the strength of the state's case does not constitute undue coercion." *Iaea*, 800 F.2d at 867; *see also, e.g.*, *United States v. Mitchell*, 633 F.3d 997, 1002 (10th Cir. 2011) (discussing *United States v. Carr*, 80 F.3d 413, 417 (10th Cir. 1996)). The State's position may be distressing, even terrifying to a defendant, yet, for instance, one who pleads guilty solely because he hopes to avoid the death penalty is not, merely because of that fact, making an involuntary plea. *Brady*, 397 U.S. at 749-50.

Here, although the record developed in state court shows a great deal of strong urging, that is all it shows. Bonck, defense investigator Stovall, and defense and prosecuting counsel were at the courthouse for a pretrial conference when plea negotiations commenced. Record Ex. D1 at 31:19-33:10, 60:13-17. Bonck and his attorney clearly had some disagreements. Counsel said:

> What I remember was, we had some heated exchanges. I mean, there was – there was some yelling and screaming going on, no doubt about that. . . . [O]bviously [Bonck] was trying to get as little out of this as possible, and I tried to keep a realistic position saying, "But if we go to trial on Monday, this is what you might be looking at." So I mean, there

was a lot of give and take. And I remember that – I remember that we did do a little shouting and yelling, I remember that.

*Id.* at 36:12-21.

The defense investigator, too, testified that it was an extraordinary interaction, but he did not indicate that Bonck's will was overborne. On the contrary, his testimony portrays Bonck as a full participant. *Id.* at 53:2-61:5. He recalled that Bonck cried at the hearing and possibly during the plea negotiations. *See* Record Ex. D1 at 53:12-13. Crying might indicate coercion, but it might equally well indicate frustration with the only options available, a fervent wish that the prosecution had never come to pass, or, as the trial court believed, genuine remorse, *see* Record Ex. A at 11:20-21. The investigator, at any rate, did not connect Bonck's crying with loss of self-direction or, for that matter, with Bonck's medications.

By all accounts, Bonck received an extremely favorable plea agreement involving the dismissal of other serious charges and a sentencing agreement that was binding on the trial court. Record Ex. D1 at 50:3-6 (counsel testifies that the plea agreement "wasn't fair for the State and you [Bonck] got the best deal you could ever get, and you did a good job getting that agreement."); *id.* at 26:21-27:3. Bonck was also an experienced criminal defendant who had considerable "prior experience with the legal system." *Miller*, 474 U.S. at 117; Record Ex. D2 at 19:25-26:20.

The specific testimony about the nature of the negotiations outweighs the general fact that Bonck, counsel, and the prosecution engaged in a difficult, five-hour bargaining session. The record does not show that defense counsel overcame Bonck's will.

### 3. Combination of Medications and Urging by Counsel

If there were some evidence to support Bonck's confusion and some evidence to support the notion that his will was overborne – even if not enough to support a finding in Bonck's favor on either separate claim – it might be possible that Bonck's prescription medications combined with counsel's urging and rendered the plea involuntary. But the testimony about Bonck's interaction with counsel is wholly inconsistent with his claim that he was intimidated and confused. *E.g.*, *id.* at 49:19-21 (counsel says he "went back and forth like a rabbit with you [Bonck] making demands on me, and making demands on my investigator, and making demands on the State . . . until we got an agreement that you would put your signature to."); *id.* at 55:13-16 (Stovall explains that counsel "would leave and we would sit, and he'd come back and you would negotiate loudly and he'd leave again."). Bonck's testimony at the hearing would, if fully credited, show that counsel misled him about some things. But that testimony, given in May 2010, is contradicted by the record, *compare, e.g.*, Record Ex. D1 at 44:18-45:7, 50:17-23, *with* Change of Plea Tr. at 6:7-7:13, and also does

nothing to show that counsel overbore Bonck's will.

The state court record does not support a claim that Bonck pled guilty because

he was both intimidated and confused.  This claim should be denied for lack of merit.

### C. Discovery and Phone Records

In response to the Order to Show Cause, Bonck explained that the discovery

and phone records to which he refers relate to the two charges that were dismissed

under the Plea Agreement.  He says:

> After Mr. Bonck plea he received a report from a Dr. Theade at St. V's
> hospital!  <u>See Exhibit C</u>
>  He also received a report where L.C. denied any trauma at all.  <u>See</u>
> <u>Exhibit D</u>  K.K. gives a big story on page 9 & 10 of her statement about
> a phone call on June 30.  In Mr. Bonck's Sprint phone records it show
> only one call on June 30 and it is from her to him not him to her.
>  Also when Mr Bonck had his investagators interview K.K. and
> K.M. after they read there 2002 statements to police they each gave
> comptely different stories.  These are the cases used in the Just Notice.
> Mr Bonck received the new versions in Oct of 2010.  Newly discovered
> evidence.
>  <u>See Exhibits E, F, G, H, I.</u>  Also K.K. alleged phone call is on
> <u>Pages 9 & 10 of Exhibit E.</u>  <u>Schlup v. Delo 513 U.S. 298, 327 (1995).</u>

Resp. to Order to Show Cause (doc. 7) at 8-9 (spelling errors in original).  Although

it appears unlikely that the evidence Bonck submits was duly admitted in state court,

it will be considered here for the purposes for which Bonck offers it, notwithstanding

28 U.S.C. § 2254(e)(2).

None of this evidence goes to Bonck's conviction for sexual intercourse without consent involving K.C., an eight-year-old boy, in August 2002 – the only conviction at issue. K.K. is K.M.'s mother. K.M. and L.C. are not boys and were not eight years old, and the incidents involving them were alleged to have occurred in June 2002, not August. *See* Resp. to Order to Show Cause Exs. C1-C2, E2, E3, E24, E31, G1, H2, I1, J1-J5; Change of Plea Tr. at 8:16-17; Plea Agreement (Pet. Ex. 2 (doc. 1-2 at 28)); Record Ex. G at 5.

Even assuming, for the sake of argument, that this evidence would have led to Bonck's acquittal at trial on the charges that were dismissed pursuant to his plea agreement, it has no bearing on the only conviction at issue here, nor does it establish that Bonck's guilty plea was unknowing, unintelligent, or otherwise invalid. Bonck has never, throughout his extensive efforts to undo his 2004 guilty plea, claimed that he did not commit the only crime of which he was actually convicted. There is nothing unlawful about the State's dismissal of charges the defendant does not believe can be proved beyond a reasonable doubt, whether on its own motion or pursuant to a plea agreement. This claim should be denied for lack of merit.

## D. Presentence Report

A sentence based on materially incorrect information or assumptions violates due process, *see, e.g.*, *United States v. Tucker*, 404 U.S. 443 (1972), *Townsend v.*

*Burke*, 334 U.S. 736, 740 (1948). But the only sentence at issue here is the one Bonck and the State agreed to. At the sentencing hearing, Bonck's counsel explained that he believed any inaccuracies in the report could be challenged if they became relevant to a revocation proceeding. Record Ex. A at 2:4-14. The trial court did not rely on the presentence report in any way, imposing instead the sentence Bonck bargained for. Nor does Bonck identify any inaccuracy in the presentence report. Bonck's failure to receive the presentence report at the time of his sentencing does not make unconstitutional his continued custody on the conviction at issue here.

## IV. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2254 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Although Bonck seeks to withdraw his guilty plea, he does not claim he did not commit the crime to which he pled guilty, nor does he claim he wanted to go to trial

on that charge. He has not identified any aspect of the rights or defenses he waived, the legal consequences he incurred, or the evidence he believed would be used against him that he failed to understand at the time he pled guilty to the crime involving K.C.

He contests evidence underlying charges that were dismissed pursuant to the plea agreement he seeks to undo. If his guilty plea was constitutionally invalid, of course, it does not matter what Bonck's true aims in litigating his plea may be; but the fact that he waived his opportunity to contest the dismissed charges does not convert a knowing, voluntary, and intelligent guilty plea to a *different* crime into an involuntary one. To the extent the State could not or did not want to prove the dismissed charges beyond a reasonable doubt at trial, it could have dismissed them without a plea agreement. To the extent it could have proved them, Bonck was not prejudiced by their dismissal.

The state court record has been filed and is closed under 28 U.S.C. § 2254(e)(2). Nothing about the plea agreement or the plea colloquy suggests anything less than a knowing, voluntary, intelligent, and extraordinarily advantageous plea for Bonck. The testimony at the evidentiary hearing does not support Bonck's claim that he was "confused" by the effects of prescription medication. Bonck was competent, alert, and fully participated in the plea bargaining of his case at the time he decided

to plead guilty. Likewise, the record does not support Bonck's claim that his attorney coerced him into pleading guilty. Bonck was stoutly resolute about the sentence he was willing to accept and repeatedly sent his lawyer back to the prosecution to extract further concessions. There is no evidence in the record that Bonck's prescription medications, combined with his counsel's strong urging to plead guilty, rendered his guilty plea involuntary. Bonck's interaction with his counsel was wholly inconsistent with his claim that his medications caused him to be confused.

Bonck claims that he has new evidence in the form of inconsistent statements and phone records, but the evidence goes to the dismissed charges, not the crime to which Bonck pled guilty. Finally, assuming Bonck did not receive the presentence report, he identifies no inaccuracy in it, and it was not used against him in any way because his sentence was set forth in the plea agreement, which was binding on the trial court.

Reasonable jurists would find no basis for disagreement on the merits of Bonck's claims and no reason to encourage further proceedings in this case. A certificate of appealability should be denied.

Based on the foregoing, the Court enters the following:

## RECOMMENDATION

1. The Petition (doc. 1) should be DENIED on the merits.

2. The Clerk of Court should be directed to enter by separate document a judgment in favor of Respondents and against Petitioner.

3. A certificate of appealability should be DENIED.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), Bonck may serve and file written objections to this Findings and Recommendation within fourteen (14) days of the date entered as indicated on the Notice of Electronic Filing. If Bonck files objections, he must itemize each factual finding to which objection is made and must identify the evidence in the record he relies on to contradict that finding; and he must itemize each recommendation to which objection is made and must set forth the authority he relies on to contradict that recommendation. Failure to assert a relevant fact or argument in objection to this Findings and Recommendation may preclude Bonck from relying on that fact or argument at a later stage of the proceeding. A district judge will make a de novo determination of those portions of the Findings and Recommendation to which objection is made. The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendation. Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

Bonck must immediately notify the Court of any change in his mailing address by filing a "Notice of Change of Address."  Failure to do so may result in dismissal of his case without notice to him.

DATED this 29th day of November, 2011.


/s/  Carolyn S. Ostby
United States Magistrate Judge